***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Pfeiffer, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner on 18 March 2002 as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on the date of the injury giving rise to this claim, with the employer employing the requisite number of employees to be bound under the Act's provisions.
2. An employment relationship existed between the plaintiff and defendant-employer on the date of the injury giving rise to this claim.
3. The Reciprocal Group was the carrier on the risk for workers' compensation purposes on the date of the injury giving rise to this claim.
4. The date of the alleged injury by accident is 29 October 2001.
5. The plaintiff's average weekly wage as of 29 October 2001 was $412.80. This yields a compensation rate of $275.21.
6. The parties mediated this matter on 12 March 2002. Defendants paid the entire mediator's fee of $525.00, thereby advancing the plaintiff's share of $262.50 against any award that the plaintiff was receive herein.
7. The parties stipulated into evidence in this matter a packet of the plaintiff's medical records. The undersigned takes judicial notice of the following Industrial Commission forms filed in this matter: Forms 18, 19, 33, 33R, and 61. Defendants introduced and the undersigned admitted the following exhibits: (1) a diagram of the operating room; (2) employee occurrence report; (3) the plaintiff's recorded statement; and (4) the plaintiff's answers to interrogatories.
8. The issue to be determined as a result of this hearing is whether the plaintiff sustained an injury by accident as defined in the Act to her right arm.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, the plaintiff was 35 years old. The plaintiff began working for defendant-employer on 9 April 2001 as a surgical technician scrub nurse.
2. The plaintiff's duties as a scrub nurse entailed working in the operating room assisting with surgeries, primarily orthopedics. While defendant-employer is not a trauma hospital, it nevertheless had the fastest turnover of operating rooms than any other hospital in which she had worked.
3. On 29 October 2001 the plaintiff assisted in a surgery taking place in operating room (OR) 11. The plaintiff began her duties at approximately 7:30 a.m. The plaintiff took a lunch break that day, and had planned already to be off that afternoon for personal reasons.
4. At the end of her lunch break, the plaintiff was making a telephone call before returning to OR 11. While the plaintiff was on hold during this telephone call, she heard her name paged over the intercom and she was asked to return to OR 11. The plaintiff immediately hung up the telephone and headed back to OR 11.
5. It is the plaintiff's contention that she was paged to return to OR 11 "stat." However, she could not definitively testify that that particular word actually was used. According to the plaintiff's testimony, it was her general impression that it was a matter of some urgency or she assumed that there was some sort of hurry.
6. The word "stat" has a specific medical purpose such that it is used only in dire medical emergencies. The person who paged the plaintiff would not have used the word "stat" to page the plaintiff to return to the operating room; in fact, she has only used the word when paging anesthesiologists, not even surgeons.
7. In fact, there was no emergency or urgent situation that required that the plaintiff return to OR 11 after her lunch break. The plaintiff was needed back in OR 11 to assist in cleaning up after the surgery.
8. The plaintiff testified that after getting the page instructing her to return to the operating room, she rushed to OR 11. However, the plaintiff did not present any evidence to corroborate that she actually was in a hurry or was rushing. She did not appear to her coworkers to be rushing or in a hurry to return to OR 11, and the person who paged her could not testify to any reason why she would have paged the plaintiff to hurry to the operating room, particularly given the lack of an emergency situation.
9. The employee occurrence report filled out by the plaintiff on 29 October 2001, the date of the incident, does not mention that she was paged "stat" to return to OR 11. Likewise, the recorded statement which took place on 14 November 2001, slightly more than two weeks after the incident, does not include any reference to the plaintiff being paged or feeling as though she had to hurry back to the operating room. Finally, the plaintiff's answers to defendants' interrogatories, dated 8 March 2002, also do not indicate that the plaintiff was paged to hurry back to the operating room on 29 October 2001.
10. Based upon the totality of the evidence presented, including the testimony of the other witnesses, it is found herein that the plaintiff's testimony that she was paged to return to OR 11 "stat" such that this page caused an interruption of her normal work routine is deemed not credible. This finding is also bolstered by the fact that the plaintiff acknowledged that the hospital had an unusually fast turnaround in the operating rooms, and therefore it is reasonable to assume that it is commonplace for scrub nurses to have to hurry somewhat between surgeries.
11. After the plaintiff was paged, which in itself is not so unusual as to rise to the level of an interruption of her normal work routine, she proceeded back to OR 11, and in the process, she opened the door to Core B to take her into OR 11. The plaintiff opened the left door, which swings open to the left, with her right hand. When she opened the door with her right hand, she felt a pop in her right shoulder and shortly thereafter began to feel a burning sensation in her shoulder. As she entered the operating room, the plaintiff told at least one coworker that she felt pain in her right shoulder. She reported the incident to her supervisor shortly after it happened, and sought treatment from one of the doctors at the hospital.
12. Going through the Core B doors was part of the plaintiff's usual and customary duties. The plaintiff had to go through these doors on a regular if not daily basis to get to the operating rooms. Nothing unusual or untoward, such as the door sticking or hitting her, occurred when the plaintiff opened the left door to Core B on 29 October 2001 and in fact, in her recorded statement, the plaintiff indicated that she opened the door as she normally did and did nothing differently when opening it. Apart from the plaintiff's right shoulder being injured by her opening the door to Core B on 29 October 2001, nothing out of the ordinary occurred.
13. The plaintiff ultimately was diagnosed with a subscapularis tear and underwent arthroscopic surgery on 13 December 2001. The plaintiff has been out of work since the afternoon of 29 October 2001 after she injured her right shoulder, and she has been receiving long-term disability benefits.
14. While the plaintiff sustained an injury at work arising out of and in the course of her employment with defendant-employer on 29 October 2001, it was not as a result of an injury by accident as defined in the Act. Unless and until the statute is changed by the General Assembly, specific traumatic incidents to parts of the body other than the back are not compensable under the Act.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. While the plaintiff's right subscapularis tear occurred at work on 29 October 2001 and arose out of her employment, it was not the result of an injury by accident as defined in the Act. To constitute an "accident," the incident must be an unforeseen or untoward event, or an interruption of the employee's work routine and the introduction thereby of unusual conditions. The plaintiff was performing her normal job duties in her normal, customary manner, and there was no untoward event or interruption of her normal work routine that precipitated the injury to her right shoulder when she opened the door on 29 October 2001. N.C. Gen. Stat. § 97-2(6); Davis v. Raleigh Rental Center, 58 N.C. App. 113,292 S.E.2d 763 (1982).
2. Because the plaintiff did not sustain an injury by accident as defined in the Act, she has not met her burden of proving the compensability of her right shoulder injury. Accordingly, the plaintiff is entitled to no benefits under the North Carolina Workers' Compensation Act.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, the plaintiff's claim for benefits under the North Carolina Workers' Compensation Act must be and the same is HEREBY DENIED
2. Each party shall bear its own costs of this proceeding.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER